# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

JEROME REVELL and )
SALLY J. REVELL, )
husband and wife, )
)
          ) C.A. No. N13C-05-113 CLS
  Plaintiffs, )
)
    v. )
)
ARCHIE E. SIMMONS, JR., )
and STAR PROPERTY )
MANAGEMENT, LLC, a )
Delaware limited liability )
company, )
)
)
  Defendants. )

Date Submitted: March 25, 2014
Date Decided: June 30, 2014

On Plaintiffs' Motion for Leave to Amend the Complaint. **DENIED.**

## <u>ORDER</u>

Gary S. Nitsche, Esq. and Eileen McGivney, Esq. Weik, Nitsche, Dougherty & Galbraith. Wilmington, Delaware 19899.  Attorneys for the Plaintiffs.


Joel H. Fredricks, Esq. Casarino Christman Shalk Ransom & Doss, P.A. Wilmington, DE 19899.  Attorney for Defendants.



**Scott, J.**

**Introduction**

Before the Court is Plaintiffs Jerome and Sally Revell's ("Plaintiffs") Motion to Amend the Complaint brought in order to correctly identify the location of Mr. Revell's injury and to add the property owner as a party in this personal injury suit. The Court has reviewed the parties' submissions and held oral argument. For the following reasons, Plaintiffs' motion is **DENIED.**

**Background**

On May 13, 2013, Plaintiffs filed this action against defendants, Archie E. Simmons, Jr. ("Mr. Simmons") and Star Property Management, LLC ("Star")(collectively, "Defendants"), alleging that Defendants' negligence caused Mr. Revell to suffer injury when he slipped and fell on water while he was inside a rental property on December 30, 2011. In the Complaint, Plaintiffs asserted that the rental property was located at 904 N. Madison Street, Apartment 1, Wilmington, Delaware 19801 (the "Madison Street Address" or "Madison Street Property") and that it was owned, operated and/or maintained by Mr. Simmons.

On July 12, 2013, Defendants issued written discovery requesting the addresses where the Plaintiffs previously resided.[1] Plaintiffs provided the Madison Street Address and 503 Teller Street in Wilmington, Delaware.[2] On July 15, 2013, Defendants answered the Complaint and denied Plaintiffs' allegation that Mr.

---

[1] Defs. Resp. to Mot. to Amend, Ex. E, Answers to Interrogatories No. 29.
[2] *Id.*

Simmons owned the Madison Street Property.[3]  On October 9, 2013, in response to an interrogatory, Defendants again denied owning the property.

On December 4, 2013, the Court issued its Trial Scheduling Order, stating that the deadline to file motions to amend was February 28, 2014 and that the trial date was April 20, 2015.[4]  The parties scheduled depositions for Mr. Simmons and Plaintiffs for February 26, 2014.  In early February, Plaintiffs' counsel contacted defense counsel to confirm that Mr. Simmons was denying ownership of the property where the incident occurred and to request that defense counsel provide the identity of owner.[5]

Each of the depositions took place as scheduled on February 26, 2014.  Mr. Revell was initially confused about the correct address where the incident occurred,[6] but he eventually confirmed that he fell at the Madison Street Property.[7]  However, in Mrs. Revell's deposition, she testified that Mr. Revell fell at 418 East 11th Street, Apartment 1 (the "East 11th Street Address" or "East 11th Street Property").[8]  Mrs. Revell rented the apartment at the East 11th Street Address, unaccompanied by Mr. Revell,[9] from Star after completing a rental application and

---

[3] Answer at ¶ 2. Defendants denied Paragraph 3 of the Complaint which alleged that Mr. Simmons resided in Greenville and that he owned and operated the property located at the Madison Street Address.

[4] D.I. 14.

[5] Pls. Mot. to Amend, Ex. A.

[6] Mr. Revell's Dep. Trans. at 37:15 and 38:6-7.

[7] *Id*. at 38:12-21.

[8] Mrs. Revell Dep. Trans. at 13:6.

[9] *Id.* at 13:9-13 ("And when I go get the property, I go by myself").

an agreement under the last name "Chandler," her last name from her prior marriage.[10] It appears that Mr. and Mrs. Revell have been married since 1998. However, Mrs. Revell testified that she still uses "Chandler" in some cases.[11] Mr. Simmons stated that he owned both Star, a management company, and Owl's Nest Properties, LLC ("Owl's Nest), an umbrella company[12] and that Owl's Nest was the owner of the East 11th Street Property.[13] He also stated that the tenant who lived upstairs from the apartment at issue was evicted and moved out in September of 2013.[14]

According to Plaintiffs, it was not until the date of the depositions that Plaintiffs' counsel learned that the correct location was the East 11th Street Property and that the correct owner was Owl's Nest. According to Defendants, after the depositions took place, Plaintiffs' counsel then provided Defense counsel with the rental agreement for the apartment located at the East 11th Street Address. The rental agreement was between "Sally Chandler" and Star for a term of one year, from November 23, 2011 to October 31, 2012.[15] Mrs. Revell signed the rental agreement as "Sally Chandler."[16] Thereafter, Defendants located the rental

---

[10] Pls. Mot . Ex. B; Defs. Opp., Ex. I.
[11] Mrs. Revell Dep. at 7:19-21.
[12] Mr. Simmons' Dep. Trans. at 10.
[13] *Id.* at 16:6-12.
[14] *Id*. at 31:7-8.
[15] Pls. Mot. Ex. B.
[16] *Id.*

application, which was also under the name "Sally Chandler."[17]   On the application, she stated that her present address was 502 North DuPont Street, not the Madison Street Address.  In the space for the "Spouse/Roommate Name," she only provided her daughter's name, Tashon Chandler.  The application also required that she list all co-occupants, but she only listed her daughter and her son, Robert Chandler.  Neither the application nor the rental agreement included Mr. Revell or any other mention of the last name "Revell."[18]

## Parties' Contentions

On March 10, 2014, Plaintiffs filed this motion to amend the Complaint in order to correctly identify the location of Mr. Revell's fall and to add Owl's Nest as a party.  Plaintiffs argue that Mr. Simmons, as sole owner of Owl's Nest and Star, received notice of this action when Star was served and since he had no other rental agreement with Mrs. Revell other than the lease at issue.  Plaintiffs further argue that the proposed amendments should be permitted because they require the same proof as the original complaint.  Lastly, Plaintiffs contend that allowing the amendments would be in accord with Delaware's strong policy in favor of trial on the merits since they would then be able to pursue their claim.

Defendants oppose Plaintiffs' motion, arguing that Plaintiffs' failure to amend the motion through March 2014 constitutes inexcusable neglect,

---

[17] Defs. Opp., Ex. I.
[18] *Id.*

considering the length of time that Plaintiffs possessed the rental agreement for the East 11th Street Property and the Defendants' repeated denial of ownership. Defendants also argue that they would suffer undue prejudice since there is no record of the incident and the potential witnesses identified by the Plaintiffs are no longer available. Defendants challenge the addition of Owl's Nest based on the expiration of the two-year statute of limitations, Plaintiffs' failure to satisfy Delaware Superior Court Civil Rule 15(c), and the fact that Mr. Simmons, even as sole owner of Owl's Nest, was unaware of any claims for the East 11th Street Property. The Court heard oral argument on March 25, 2014.

## Discussion

Delaware Superior Court Civil Rule 15(a) states:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*[19]

However, leave of court will not be freely given when "there is evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, prejudice, futility, or the like."[20] Rule 15(c) governs

---

[19] Del. Super. Ct. Civ. R. 15(a)(emphasis added).
[20] *Pettit v. Country Life Homes, Inc.*, 2006 WL 2811707, at *1 (Del. Super. Oct. 3, 2006).

6

the relation-back of amendments to a pleading and states that an amendment will relate back when

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by statute or these Rules for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[21]

The Court finds that the facts in the case submitted by Defendants, *McClain v. McDonald's Restaurants of Delaware, Inc.*,[22] are the most analogous to the facts here. In *McClain*, a plaintiff in a personal injury suit misidentified the location of his injury and sued six different entities in connection with that injury.[23] Thereafter, defense counsel questioned whether the restaurant in the complaint was the correct location of the injury because the restaurant's owner had not received any notice of the incident until the filing of the lawsuit. Counsel for the plaintiff then confirmed that same location and stipulated to a dismissal of all entities not associated with that location. One year after the stipulated dismissal, the plaintiff's

---

[21] Del. Super. Ct. Civ. R. 15(c).
[22] 2011 WL 2803108 (Del. Super. July 5, 2011) *aff'd,* 32 A.3d 989 (Del. 2011).
[23] *Id*. at *1-2.

deposition revealed that the accident occurred at a different restaurant which was operated by one of the dismissed entities. Thereafter, the plaintiff moved to vacate the dismissal and to amend the complaint to correctly identify the location and name the owner.

The Court found, *inter alia*, that the plaintiff's failure to amend the complaint stemmed from his own inexcusable neglect and that his "protracted failure to identify the correct [] location, and thus the correct defendant, cannot be explained other than by inexcusable carelessness."[24] The Court was persuaded by the fact that defense counsel had previously raised questions about the correct location and that the plaintiff's counsel had confirmed that the complaint properly identified the location. Moreover, the record was void of any justification for the delay.[25] In finding that the requirements under Rule 15(c) were not satisfied, the Court determined that, if added to the complaint, the owner would be significantly prejudiced since discovery was closed and there had been a significant lapse of time since the expiration of the statute of limitations.[26] The Court stated that the plaintiff could not demonstrate that the owner had notice because "the 'notice' [the owner] received of [the] suit was notice of a materially different set of operative facts from those encompassed by [the plaintiff's] proposed amendments."[27]

---

[24] *Id*. at *4.
[25] *Id*.
[26] *Id*. at *5.
[27] *Id.*

The Court will not allow Plaintiffs to amend their complaint in order to identify the East 11th Street Address as the location of the incident or add Owl's Nest as the correct owner due to Plaintiffs' inexcusable neglect. Just as the defendants raised concerns regarding the correct location of the injury in *McClain*, Defendants also made assertions which should have alerted Plaintiffs of the possibility that they named an incorrect location or owner. In July of 2013, two months after Plaintiffs filed the Complaint, Defendants indicated that they did not own the property contained in the Complaint when they filed their Answer. Defendants again denied ownership in October of 2013. In *McClain*, the plaintiff's counsel confirmed that the incorrect location was correct; here, in July of 2013, in response to Defendants' interrogatory requesting Plaintiffs' prior addresses, Plaintiffs again listed the Madison Street Address. In early February of 2014, Plaintiffs' counsel sent an e-mail to confirm that Defendants were denying ownership of the property. Although Plaintiffs' counsel attempted to determine ownership of the Madison Street Property through the e-mail, Plaintiffs had a lease agreement showing that the proper location was the East 11th Street Address. The Court's finding of inexcusable neglect is further supported by Plaintiffs' failure to propose these amendments until March 10, 2014, despite Plaintiffs' counsel's discovery of the correct location on February 26, 2014 and the Trial Scheduling Order's February 28, 2014 deadline to file motions to amend. The Court notes that

9

trial scheduling orders issued by this Court "'are not merely guidelines but have full force and effect as any other order of the [Superior] Court.'"[28]

Plaintiffs have also failed to satisfy the requirements under Rule 15(c) for the relation-back of the proposed amendments. Plaintiffs argue that the Defendants had notice since Mr. Simmons was the sole owner of Owl's Nest and Star, he received notice when Star was served, and the only agreement that he entered into with Mrs. Revell was for the apartment where the incident occurred. However, any notice would have been "of a materially different set of operative facts from" from the facts alleged at the inception of this suit:[29] Plaintiffs claimed that Mr. Revell fell at a property that neither Mr. Simmons nor his companies owned or managed. Even if Mr. Simmons performed a search of all of the agreements and applications for his properties for Mr. or Mrs. Revell, he would have likely been unsuccessful because the rental agreement and application were signed by Mrs. Revell using a different last name and she did not mention "Revell" anywhere on either document as her spouse or otherwise. That search would have been further complicated by the fact that the address that she listed in the rental application was not listed in response to Defendants' interrogatory requesting Plaintiffs' prior addresses. For these same reasons, the Court also finds that Defendants could not have known that, but for these mistakes, Owl's Nest

---

[28] *Sammons v. Doctors for Emergency Servs., P.A.*, 913 A.2d 519, 528 (Del. 2006)(quoting *Fletcher v. Doe,* 2005 WL 1370188 (Del.Super.Ct.2005)).
[29] *McClain,* 2011 WL 2803108 (Del. Super. July 5, 2011) at *5.

10

would have been named a proper party.  As Defendants point out, the only possible witness, other than Plaintiffs, are unavailable.  Consequently, Defendants would suffer prejudice based on the lack of notice.

## <u>Conclusion</u>

For the aforementioned reasons, Plaintiffs' Motion to Amend the Complaint is **DENIED.**

**IT IS SO ORDERED.**

*/s/ Calvin L. Scott*
**Judge Calvin L. Scott, Jr.**

11